**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VICTOR E. BAILEY,** | § | |
| **TDCJ No. 01950776,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-17-CA-481-FB** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Victor Bailey, an inmate in the custody of the Texas Department of Criminal

Justice–Correctional Institutions Division, has filed an application for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his conviction for aggravated robbery. As required by

Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of

the petition. Having considered the habeas application (ECF No. 1), respondent's Answer (ECF

No. 14), the record (ECF Nos. 15 & 16), Mr. Bailey's Reply (ECF No. 19), and applicable law,

the Court finds the petition should be **DENIED**.

**I. Procedural Background**

A grand jury indictment returned June 13, 2011, charged Victor Bailey, as a habitual

offender, with aggravated robbery with a deadly weapon. (ECF No. 15-2 at 9; ECF No. 16-9

at 71). A jury found the petitioner guilty as charged, and he pleaded true to the indictment's

enhancement allegations. (ECF No. 16-9 at 55). The 175th District Court, Bexar County, Texas,

assessed punishment at 40 years' imprisonment. (ECF No. 15-2 at 30; ECF No. 16-9 at 66). Mr.

Bailey appealed, asserting the trial court erred in overruling his motion for a directed verdict.

The Fourth Court of Appeals affirmed the judgment of the trial court. *Bailey v. State*, No. 04–14–00582–CR, 2015 WL 797641, *3 (Tex. App.–San Antonio Feb. 25, 2015, no pet.).

Mr. Bailey sought a state writ of habeas corpus on February 22, 2016, alleging he was denied the effective assistance of counsel. (ECF No. 16-9 at 5, 11). He also asserted insufficiency of the evidence and *Batson* claims. (ECF No. 16-9 at 20, 22). The habeas trial court designated issues for resolution. (ECF No. 16-9 at 73). Mr. Bailey's retained trial counsel, Mr. Reece, Mr. Gebbia, and Ms. Anderson, filed affidavits in the state habeas action. (ECF No. 16-9 at 81-86, 93-95, 105-06). The habeas trial court, which was also the convicting court, issued findings of fact and conclusions of law and recommended the writ be denied. (ECF No. 16-9 at 114-25). Mr. Bailey supplemented his habeas pleadings on February 24, 2017, and the habeas trial court issued findings of fact and conclusions of law, recommending the supplemental claims be denied. (ECF No. 16-7). On April 5, 2017, the Court of Criminal Appeals denied the habeas application on the findings of the trial court. *Ex parte Bailey*, No. WR–85,068–01, 2017 WL 3205297 (Tex. Crim. App. 2017); ECF No. 16-5.

In this section 2254 action, petitioner Bailey alleges: (1) he was denied the effective assistance of counsel because counsel:  failed to conduct an "independent investigation;" failed to move to exclude evidence of his prior conviction; failed to seek a jury instruction on self-defense; and "abandoned" him at trial; (2) he was denied his right to due process and a fair trial because the prosecutor excluded an African-American juror based on his race; and (3) "The prosecutor failed to cede all favorable evidence pursuant to the Michael Morton Act . . ." (ECF No. 1 at 10).

## II. <u>Factual Background</u>

The Fourth Court of Appeals summarized the facts presented at trial as follows:

It is undisputed that in the late morning hours of July 6, 2010, Bailey arrived at Classic Diamond Company seeking to sell two rings. Classic Diamond Company is a jewelry store owned and operated by Ralph Benavides. The store front is equipped with a cage-like security door that can only be unlocked by a person behind the interior display case. Once Benavides buzzed Bailey into the store, Benavides proceeded to inspect the rings while Bailey stood watch. A physical altercation ensued between the two men, resulting in property damage to the store and physical injury to Bailey. The blood left at the scene was stipulated to contain the DNA of Bailey.

Benavides testified that he immediately recognized that the stones in the rings were not genuine. Once Benavides informed Bailey of his findings, Benavides testified that Bailey became agitated, said that he paid $2,000 for the pair of rings, and simultaneously pulled a pistol from his waistband and pointed it at Benavides. Once the weapon was revealed, Bailey said, "I don't want to hurt you, I don't want to shoot you, I just want money." Benavides claimed that he gave Bailey $50–$75 that he had on his person, and that Bailey placed the money in his pocket. Benavides stated that because he was ". . . scared to death" that he would be harmed, he instinctively grabbed for the gun and a struggle followed.

Benavides tried to disarm Bailey, but was unsuccessful. Once the men gained some distance between one another, Bailey tried to roll over the top of a glass showcase but it shattered and he fell into the showcase of jewelry and broken glass. At that time, Benavides retrieved a gun from a desk. Benavides said that he saw Bailey take a tray of rings from the showcase that he fell into. Once Bailey freed himself from the glass box, Benavides pressed the button that unlocked the door in hopes that Bailey would leave. Bailey then opened the door and paused in the iron-barred cage that is installed in front of the entrance to the store, dropped the tray along with the rings, and walked away. After the State rested, the defense moved for a directed verdict of acquittal. The trial court denied the motion.

Bailey testified in his defense that after Benavides told him the rings were fake, Bailey asked him to check again. At that time, Bailey noticed that Benavides's "diamond checker" was giving off a noise and green lights, meaning that the diamonds were genuine. Bailey asked for his rings back, but Benavides refused. The two men began to argue. Bailey stated that Benavides was the first to pull out a gun. Bailey stated that he never asked Benavides for any money. Benavides trapped Bailey in the security "cage" and when Bailey attempted to buzz himself out, a physical struggle ensued. Bailey stated that the glass showcase broke and that he cut his arm, but that he did not fall through it as Benavides

> described because it was too narrow. Even though Benavides still had Bailey's rings, Bailey tried to leave the store because he did not want to get in trouble for possessing a gun as a convicted felon. Bailey managed to press the button to get out, and left the store. Because Bailey testified, the jury was made aware of his prior convictions.

*Bailey*, 2015 WL 797641, at *1.

Mr. Bailey testified he left the store after the altercation, got into a grey truck he had borrowed from a friend and parked in the parking lot, and drove away. (ECF No. 15-12 at 40-41). Mr. Benavides testified Mr. Bailey fled out the door of the jewelry store and across the street; he told the police he saw a white sedan, possibly a Grand Marquis or what looked like a decommissioned police squad car, stop in the street in front of the store and he observed Mr. Bailey getting into that car. (ECF No. 15-11 at 40-41, 44-45, 90).[1] During cross-examination, the prosecution noted Mr. Bailey told an investigator he or his girlfriend owned a Crown Victoria at the time of the robbery, and that a Crown Victoria is "kind of like a police car." (ECF No. 15-12 at 48).

### III. Standard of Review

#### A.    Review of State Court Adjudications

Mr. Bailey's habeas petition is governed by the standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. A petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) resulted in a decision based on an

---

[1] The police reported stated Mr. Benavides had identified the car as a Monte Carlo, and the police report falsely indicated the car was dark, rather than white. (ECF No. 15-11 at 97).

unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005). This difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's evaluation of the state court's application of clearly established federal law focuses on whether the state court's decision was objectively unreasonable and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, its determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a reviewing federal court presumes the state court's factual findings are sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010). The presumption afforded factual findings is even stronger when, as in this matter, the state habeas judge making the findings is also the convicting court. *See Armstead v. Collins*, 37 F.3d 202, 207-08 (5th Cir. 1994).

### B.     Review of Sixth Amendment Claims

The Court reviews claims of the alleged ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a petitioner must demonstrate counsel's performance was deficient and this deficiency prejudiced his defense. *Id.* at 687-88, 690. The Supreme Court has held that

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). There is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

When considering a state court's application of *Strickland*, this Court's review must be "doubly deferential," to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015), *citing Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). When evaluating Mr. Bailey's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded Mr. Bailey's complaints about his counsel's performance

failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

## IV. ANALYSIS

### A.    Ineffective Assistance of Counsel

Petitioner Bailey contends his counsel was ineffective because counsel: failed to investigate; failed to file a motion in limine to exclude evidence of his past convictions; failed to request a self-defense instruction; and failed to appear at trial.

### 1.    Failure to investigate

The petitioner argues his counsel was ineffective because he failed to interview a jewelry expert and failed to investigate the existence or availability of surveillance video. Mr. Bailey raised these claims in his state habeas action and the claims were denied.

A defendant may show counsel's assistance was deficient if the attorney failed to make a reasonable investigation into the case before trial. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013).

Mr. Bailey's counsel addressed this claim via an affidavit in the state habeas action:

 . . . Trial counsel had a licensed investigator who determined that there was no video from the store, and did go to the scene to investigate the scene. Our investigator also talked at length with the victim, and the results were communicated to [Bailey on] many occasions. [Bailey] never requested that his attorneys obtain a "jewelry expert", but in any event counsel does not believe one would have helped at all. The investigator was instructed to attempt to talk to the victim, but again the physical evidence, to wit a trail of the defendant's blood, and identification testimony contradicted [Bailey]'s version. Our investigator interviewed the victim of the case and confirmed that the cameras in the store were "dummy cameras". The victim convinced the investigator that Mr. Bailey committed aggravated robbery. The investigators were appointed by orders of the

court on April 5, 2013[,] and thus we were prepared on this case shortly thereafter. We had several meetings with the investigators over the course of our representation.

(ECF No. 16-9 at 82).[2]

The habeas trial court found Mr. Reece's affidavit to be "truthful and credible," (ECF No. 16-9 at 117), a finding adopted by the Court of Criminal Appeals when denying Mr. Bailey the writ. Mr. Bailey has not rebutted the state court's finding of fact with clear and convincing evidence, but instead offers only conclusory statements which are insufficient to support a claim of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). The petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

The record indicates counsel did investigate the law and facts of Mr. Bailey's case, and made strategic decisions which were not unreasonable. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir.

---

[2] The defense's investigator testified:

> A. When I had asked the – Mr. Benavides if he had security video surveillance, he said that he only had what was make believe cameras. He did not have real cameras.
> Q. Let me ask you again, as part of your investigation, were you able to get any type of video surveillance?
> A. No, sir.
>
> ***
>
> Q. Okay. Were you able to gather the security footage from across the way at the gas station?
> A. No, sir.
> Q. By that time it had already been destroyed, right?
> A. Correct.

(ECF No. 15-11 at 155-56).

2011). With regard to the video surveillance footage from the gas station across the street from the jewelry store, the "tape" was apparently never in the possession of the police, although a non-testifying officer did view the footage. (ECF No. 15-11 at 106).[3] The police detective in charge of the investigation noted that the gas station across the street from the jewelry store had a functioning video surveillance camera at the time the crime occurred, but that the police were unable to secure a physical copy of the footage. (ECF No. 15-11 at 126-27). No testimony was offered as to the content of the footage, i.e., as to the inculpatory or exculpatory nature of the video surveillance.

Mr. Bailey's counsel, however, used the absence of the video to bolster the defense argument there was insufficient evidence to support Mr. Benavides' version of the events. In response to the prosecution's opening remarks, defense counsel stated: "the only evidence of [the prosecution's theory of the case], that they have is one person's testimony, the store owner. That's it. There is no video. No witnesses. Just this one store owner." (ECF No. 15-11 at 13). Counsel also used the absence of video from the victim's security cameras to highlight the contradiction between the victim's testimony, i.e., that "[his] video system was down," with his statement to the defense's investigator that the store's video system utilized "dummy" cameras. (ECF No. 15-11 at 59-60, 155). The defense's investigator testified: "When I had asked [] Mr. Benavides if he had security video surveillance, he said that he only had what was make believe

---

[3]    The officer testified:

    A. There was some [video evidence] initially found. I did not observe that. It was seen by some other detectives, but it was not kept in the system and able to be collected later.
    Q. All right. So you never had it as part of the case file?
    A. No, ma'am.

(ECF No. 15-11 at 106).

cameras. He did not have real cameras." (ECF No. 15-11 at 91, 99, 106). In closing argument, counsel noted:

> He says he has cameras. He has got big signs that say, "I have cameras in use." Right? Boy, if there was a camera in use this would be pretty dog-gone easy, wouldn't it? But we don't have any cameras. We don't have any video. In fact, my investigation uncovered the cameras aren't even real, but he just says they hadn't been working for three weeks.
>
>           ***
>
> You know what? The gas station, there was evidence that the gas station had a video of the getaway car, right? Did we see that video? No. There is no video. No video outside. There is no video of nothing.

(ECF No. 15-12 at 69-70).

The record in this matter indicates counsel did make a reasonable investigation into the case before trial, belying the petitioner's claim of an inadequate investigation. Counsel used the absence of video evidence to Mr. Bailey's advantage, emphasizing to the jury that there was no surveillance video to substantiate the victim's claim that Mr. Bailey ran from the store across the street and jumped into a "getaway" car. (ECF No. 15-11 at 13). Accordingly, the petitioner is unable to show prejudice arising from his counsel's alleged deficient performance in failing to secure the videotapes. Because Mr. Bailey is unable to establish either deficient performance or prejudice with regard to the investigation of video evidence, the Court of Criminal Appeals' rejection of this claim was not clearly contrary to or an unreasonable application of *Strickland*.

Additionally, the petitioner has not shown ineffective assistance of counsel with regard to counsel's alleged failure to retain a "jewelry expert." Counsel employed a different, reasonable defense strategy other than to assert the rings were real, a choice within counsel's discretion. *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983). Counsel made a strategic decision in this regard, a decision entitled to deference by the Court. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled

witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified [to] is too uncertain").

A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct was strategically motivated and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). The petitioner has presented no evidentiary, factual, or legal basis for the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* to this claim for relief.

### 2. Failure to exclude prior convictions

Petitioner Bailey alleges his trial counsel was ineffective for failing to file a motion in limine to exclude evidence of his prior convictions when counsel knew he intended to testify and it became apparent the prior convictions would be introduced by the prosecution to impeach Mr. Bailey. (ECF No. 1 at 6). The petitioner raised this claim in his state habeas action, and relief was denied.

The Court of Criminal Appeals' denial of relief on this claim was not an unreasonable application of *Strickland* because counsel's actions were neither unreasonable nor prejudicial. Because Mr. Bailey chose to testify, his prior convictions were admissible. The convictions, i.e., a 2000 conviction for aggravated assault resulting in serious bodily injury and a 2005 conviction for possession of narcotics with the intent to distribute, were not remote. Mr. Bailey's trial counsel cannot reasonably be faulted for failing to object to admissible testimony. *Roberts v.*

*Thaler*, 681 F.3d 597, 612 (5th Cir. 2012). Furthermore, the record contains the petitioner's signed statement acknowledging that, if he chose to testify, he understood that all his prior convictions would be introduced to impeach his credibility. (ECF No. 16-9 at 86).

Additionally, prior to Mr. Bailey's testimony the following colloquy occurred between the petitioner and his counsel:

> MR. GEBBIA: And you understand that as part of that cross-examination, it is almost a one hundred percent certainty that they will impeach you, that means make you look bad, with your prior convictions? You understand that, right?
>
> THE DEFENDANT: Yes, sir.
>
> MR. GEBBIA: You are comfortable with that?
>
> THE DEFENDANT: Yes, sir.
>
> MR. GEBBIA: You understand that the jury will hear that?
>
> THE DEFENDANT: Yes, sir.
>
> MR. GEBBIA: And you are choosing to go ahead and take the stand anyway in your own defense?
>
> THE DEFENDANT: Yes, sir.

(ECF No. 15-11 at 140).

The reasonableness of counsel's actions is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Because Mr. Bailey chose to proceed to trial and to testify in his own defense, the admission of his prior convictions was the result of his own statements and actions and not because of any deficiency on the part of trial counsel. Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*.

### 3. Jury instruction

Petitioner Bailey argues his trial counsel was ineffective for failing to request that the jury charge include an instruction on self-defense. (ECF No. 1 at 9). Mr. Bailey presented this claim in a supplement to his state habeas action. (ECF No. 16-7 at 4). The state court concluded counsel's performance was not deficient because Mr. Bailey was not entitled to a self-defense instruction:

> [T]he Court of Criminal Appeals has held that a person committing the offense of robbery has no right of self-defense against his intended victim. *See Evans v. State*, 601 S.W.2d 943, 946 (Tex. Crim. App. 1980). Therefore, the trial court could have properly refused a self-defense instruction as applied to aggravated robbery, and counsel was not ineffective for failing to request a self-defense jury instruction.

(ECF No. 16-7 at 5).

If a state appellate court found a claim without merit based on state law, the Court may not rule that a state court incorrectly interpreted its own law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)*; Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013); *Schaetzle v. Cockrell*, 343 F.3d 440, 449 (5th Cir. 2003). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

The state court's denial of this claim was not clearly contrary to or an unreasonable application of *Strickland*. An attorney's decision to refrain from requesting a specific jury instruction is a "conscious and informed decision on trial tactics and strategy" which, like all such decisions, cannot form the basis for habeas corpus relief unless "it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (quoted in *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Counsel's choice

of strategy in this matter was to highlight for the jury the absence of evidence that Mr. Bailey intended to or actually did rob the victim, highlighting contradictions in the victim's statements and the absence of physical evidence supporting the victim's recitation of events. Having reviewed the entire trial transcript, the Court concludes this strategy was both plausible and well-presented, and did not "rob[] the defendant of any opportunity to get a fair trial." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotations omitted). Counsel's implicit rejection of a self-defense strategy was not unreasonable because, as noted by the state court, pursuant to Texas law a person committing the offense of robbery has no right of self-defense against his intended victim. *Evans*, 601 S.W.2d at 946.

### 4. Representation at trial

Petitioner Bailey alleges Mr. Reece was ineffective for failing to appear and represent him during his trial, but instead Mr. Reece allowed Mr. Gebbia to represent Mr. Bailey at trial. The entirety of this claim is as follows:

> Bailey paid Mr. Reece $11,300 to represent him at his jury trial. Bailey and Mr. Reece talked about the strength and weakness of the State's and trial strategy. Pursuant to the decision in the U.S. v. Gonzalez-Lopez Court, Bailey believed that Mr. Reece would best represent him in the trial proceedings.

> Mr. Reece submitted an affidavit alleging that Bailey did not enter into a contract with him but his firm. The trial court agree[d] to and accepted this reasoning. Based on this find[ing] of facts and conclusions of law, Bailey did not have an attorney to represent him as demanded by the Sixth Amendment of the U.S. Constitution, but instead, a "firm."

> Mr. Reece signed his name to the contract not the firm. Nor did Mr. Reece inform Bailey that he will be represented by the firm and he will be assigned an attorney to represent him. Based on the trial court's unreasonable application of the law, a different attorney could have represented Bailey at each pre-trial appearance and a different attorney could have represented Bailey during each day of jury trial proceeding.

It was never the legislature['s] intent that an accused be appointed a firm to represent him. Therefore, Bailey was abandon[ed] by Mr. Reece at his jury trial. Bailey personally paid Mr. Reece to represent him, and only discussed trial matters with him. Bailey did not discuss matter[s] of trial or agreed with another attorney regarding representation. The state court erred in its ruling and relief should be granted on this claim.

(ECF No. 1 at 10-11).

The petitioner presented this claim in his state habeas action and the trial court found the following facts:

The Court finds Mr. Gebbia's affidavit, which is included with this Order and incorporated herein by reference, to be truthful and credible. Mr. Gebbia states as follows, in pertinent part:

a. Mr. Gebbia was well prepared to represent Applicant at trial and did so effectively; counsel has nearly 10 years of experience in criminal law and has tried a number of serious felony cases as a first chair, including "3g" offenses.

b. In preparation for trial, counsel reviewed the discovery, interviewed the Applicant, consulted with co-counsel to develop a strategy, and had a court appointed investigator.

c. The Law Offices of Reece and Gebbia were retained to represent Applicant. The employment contract Applicant signed specifies that it is the firm that is hired and that either William Reece, Robert Gebbia, or a firm associate may provide the representation. In this case, Mr. Reece made a number of court appearances for Applicant but Mr. Gebbia was the trial counsel assigned. There was no substitution of attorneys . . ..

d. Trial counsel denies telling Applicant that Mr. Reece was "busy." Trial counsel was designated by the firm to try Applicant's case.

e. Trial counsel denies Applicant's allegations relating to trial preparation or the possession of any "notes." Trial counsel was a part of the firm when Applicant became a client of the firm and counsel had access to complete discovery and a thorough investigation.

f. Counsel conducted a thorough pre-trial investigation, including the interview of witnesses, had knowledge of relevant case law, and was well versed in criminal procedure and the rules of evidence. Trial

counsel had a licensed investigator who went to investigate the scene and interview witnesses.

g. Counsel effectively cross examined the victim and designed the cross examination so that no reasonable juror could have found that Applicant intended to rob the jewelry store.

(ECF No. 16-9 at 119-20). The habeas trial court concluded: "Based upon Mr. Reece's affidavit, Mr. Gebbia's affidavit, and Ms. Andersen's affidavit, which the court finds are credible and truthful, and this court's review of the trial and appellate records, this court finds that Applicant was not deprived of effective assistance of trial counsel." (ECF No. 16-9 at 123). The Court of Criminal Appeals denied relief on the findings and conclusions of the trial court.

The state court's denial of this claim was not contrary to or an unreasonable application of federal law. The state court's findings of fact, that Mr. Reece did not "abandon" Mr. Bailey's defense and that Mr. Gebbia ably represented him at trial, have not been rebutted by clear and convincing evidence. At best, Mr. Bailey makes only a conclusory allegation of any prejudice arising from Mr. Reece's alleged "failure" to personally represent him at trial. Conclusory allegations are not sufficient to meet the petitioner's burden of proof on an allegation of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d at 282; *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (holding that a habeas petitioner "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement" to be entitled to habeas relief on an ineffective assistance of counsel claim).

### B.   *Batson* Claim

Petitioner Bailey alleges the prosecutor used peremptory challenges to strike juror number 2 in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). He asserts:

Bailey is an African American. Bailey contends that he was denied a fair trial and equal due process protection because the prosecutor challenged an African

American juror, Juror #2, based [on] his race. During voir dire, the prosecutor pretextually target[ed] Juror #2 by asking him a sexually egoistical question before a female judge that later states that he was merely teasing. [A]nd although Juror #2 stated that he can convict under the one-witness rule, his intent was to hold the prosecutor to the high end of the beyond a reasonable doubt requirement. He had every right to do so under the law. White jurors held the same burden and [were] not struck.

(ECF No. 1 at 9).

The petitioner raised this claim in his state habeas action and the trial court concluded: "This Court finds that Applicant has failed to prove that the State used its peremptory challenges to exclude members based on their race alone." (ECF No. 16-9 at 123).

To assert a *Batson* claim, the defendant must establish an inference that the prosecution improperly struck potential jurors. *Batson*, 476 U.S. at 96-97. The prosecution must then articulate a nondiscriminatory reason for the strike. *Hernandez v. New York*, 500 U.S. 352, 389 (1991). The trial court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). To succeed on a *Batson* claim denied in a state habeas action, the federal habeas petitioner must show "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable" by clear and convincing evidence. *Garcia v. Stephens*, 793 F.3d 513, 526 (5th Cir. 2015) (internal quotations omitted), *cert. denied*, 136 S. Ct. 897 (2016).

At Mr. Bailey's trial, his counsel lodged a *Batson* challenge to the strike of juror number 2. (ECF No. 15-10 at 152). The State explained that it struck juror number 2 because:

Juror Number 2, as you recall, we were asking him to be struck for cause. He was repeatedly saying things, and in fact said it to [the prosecutor] multiple times, as well to Ms. Anderson [Petitioner's female co-counsel], that he could not follow

the one witness rule, that he was not able to convict somebody if we only brought one witness, that he would need something more, even after he was informed that that is the law and that he must follow it.

(ECF No. 15-10 at 152-53). Defense counsel responded: "He indicated that he could be fair and impartial and that he was engaged, he would listen to all the evidence before rendering his decision." (ECF No. 15-10 at 153). The trial court denied the challenge, explaining: "You can't have both. I mean, it's got to be one or the other. If he cannot follow the one witness rule, then he can't follow the law. And so the *Batson* challenge is denied." *Id.*

The Court of Criminal Appeals' denial of this claim was not contrary to or an unreasonable application of federal law. The State's explanation for its peremptory strike was race-neutral and the trial court's determination was not clearly erroneous. When the trial court credits a racially neutral explanation for the prosecution's strike of a juror, and its determination is not clearly erroneous, there no *Batson* violation. *Hernandez*, 500 U.S. at 360.

**C.    *Brady* Claim**

Petitioner Bailey alleges the prosecutor failed to disclose evidence favorable to the defense prior to trial, citing the "Michael Morton Act."[4] (ECF No. 1 at 10-11). Specifically, he contends the prosecution withheld a surveillance video. *Id.*

> In Incident Report case no. 00 502885/01, the complainant reported to the police that the individual that robbed him fled the scene in a "**white** colored monte carlo and fled in the vehicle eastbound on Hermine St." See Page 02 of 04. After reviewing the video across the street, it showed the only person leaving the scene fled in a "**dark** colored red vehicle that the (SP) got into after leaving the location, the video shows the vehicle go[ing] east on Hermine St, turn into a driveway, and then **westbound** on Hermine St. ID.

---

[4] To the extent Mr. Bailey alleges the State did not comply with the "Michael Morton Act," the claim is without merit. The petitioner's crime was committed in 2010 and the Michael Morton Act did not apply to his case. *In re State ex rel. Munk*, 448 S.W.3d 687, 691 (Tex. App.–Eastland 2014, no pet.) ("the changes made by the Michael Morton Act only apply to offenses committed after January 1, 2014.").

The video footage would have shown that Bailey could not have possibly left the scene in two different vehicles of different colors. This evidence was material to impeach the complainant's testimony and destroy his credibility. The only burden placed on Bailey in jury trial, where the deciding factor rests upon credibility, is to cast doubt in the mind of the jurors. The complainant's eyewitness account would have conflicted with the evidence of the video casting doubt as to whether they would believe his testimony as true. Moreover, the video would have shown that the person fleeing the scene at the time the complainant alleged he was robbed was not Bailey.

(ECF No. 19 at 7-8) (emphasis in original). Mr. Bailey presented this claim in his supplemental state habeas pleadings, and the claim was denied.

The elements of a *Brady* claim are: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material" to the defendant's guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence is material if there is a "reasonable probability" the result of the proceeding would have been different if the evidence had been disclosed. *Banks*, 540 U.S. at 699; *DiLosa v. Cain*, 279 F.3d 259, 263 (5th Cir. 2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Dickson v. Quarterman*, 462 F.3d 470, 477 (5th Cir. 2006). "The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Rocha v. Thaler*, 619 F.3d 387, 396-97 (5th Cir.) (internal quotations omitted), *clarified on denial of reconsideration*, 626 F.3d 815 (5th Cir. 2010).

The petitioner fails to meet his burden of proof in establishing the video surveillance was withheld, was material, or was determinative of the outcome of his trial. At trial, Mr. Bailey's counsel used the absence of this evidence to discredit the victim and to highlight for the jury that there was no objective evidence supporting the victim's version of events, and the outcome of the trial was largely a result of the jury finding Mr. Benavides' testimony credible and supported

by the physical evidence at the crime scene. Accordingly, the state court's denial of this claim was not clearly contrary to or an unreasonable application of *Brady*.

## V. Certificate of Appealability

The Court next determines whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA sua sponte without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes reasonable jurists would not debate the conclusion that petitioner Bailey is not entitled to federal habeas relief. As such, a COA will not issue.

## VI. Conclusion and Order

Mr. Bailey has failed to establish the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of

the evidence presented in the petitioner's state trial and habeas corpus proceedings. As a result, Victor Bailey's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons,

**IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and petitioner Victor Bailey's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 petition (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. Motions pending, if any, are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 24th day of April, 2018.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE